# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 16-19** |
| **ALICIA WASHINGTON** | **SECTION: "E"** |

## ORDER AND REASONS

Before the Court is a motion for compassionate release filed by Alicia Washington.[1] For the following reasons, Washington's motion for compassionate release is **DENIED**.

## BACKGROUND

On February 2, 2017, Washington pleaded guilty to conspiracy to defraud the United States, commit fraud, commit theft of public money, and commit aggravated identity theft and also to 23 counts of aggravated identity theft.[2] The Court sentenced her to 42 months imprisonment.[3] Washington is currently incarcerated at FCI Aliceville with a projected release date of May 22, 2022.[4]

On May 15, 2020, Washington filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and for transfer to home confinement because of the threat posed by the COVID-19 pandemic.[5] The government represents the BOP, as of May 26, 2020, had no record of any request for compassionate release or home confinement filed by Washington with anyone at FCI Aliceville or at the BOP.[6] Washington attaches to her supplemental memorandum an email she sent on April 14, 2020, to her case manager in

---

[1] R. Doc. 176. The government filed a response. R. Doc. 182. Washington filed a reply. R. Doc. 185. Per the Court's request, R. Doc. 187, Washington and the government filed supplemental memoranda, R. Doc. 188; R. Doc. 189. Washington also filed a notice of supplemental authority. R. Doc. 190.
[2] R. Doc. 84; R. Doc. 85; R. Doc. 86.
[3] R. Doc. 146.
[4] *Find and Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/.
[5] R. Doc. 176.
[6] R. Doc. 182, at 2.

which she stated she "wanted to know if [she was] one of the recipients for the home confinement release." [7] Washington goes on in the email to explain some of the circumstances of her confinement and then reiterates "I wanted to check in to see if I am actually eligible for the home confinement."[8] As of the time of this decision, FCI Alliceville has 1 inmate and 2 staff members who have tested positive for COVID-19.[9]

## LAW AND ANALYSIS

### I.     Washington's Request for a Reduction in Her Sentence Is Denied.

18 U.S.C. § 3582(c) provides courts "may not modify a term of imprisonment once it has been imposed," except in limited circumstances.[10] As relevant in this case, 18 U.S.C. § 3582(c)(1)(A)(i) provides courts may, upon motion of a defendant or upon motion of the Director of the Bureau of Prisons, reduce a term of imprisonment, "after considering the factors set forth in [18 U.S.C.] § 3553(a)," if "extraordinary and compelling reasons warrant such a reduction."[11]

### A.      Washington has not exhausted administrative remedies.

Courts may consider a motion for a reduction in sentence on the basis of extraordinary and compelling reasons only if the exhaustion requirement of § 3582(c)(1)(A) is met.[12] If a defendant submits a request for compassionate release to the warden of her facility, and thereafter there is a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,"[13] the exhaustion requirement of § 3582(c)(1)(A) is satisfied, and the Court may consider a motion for compassionate

---

[7] R. Doc. 188-3.
[8] *Id.*
[9] *COVID-19*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/.
[10] 18 U.S.C. § 3582(c).
[11] *Id.* § 3582(c)(1)(A).
[12] *See id.*
[13] *Id.*

release filed by the defendant. Section 3582(c)(1)(A)'s exhaustion requirement is mandatory and does not enumerate any exceptions.[14]

In this case, Washington argues the email she sent to her case manager on April 14, 2020, qualifies as a request for compassionate release to the warden of her facility. The Court finds this email was not a request for compassionate release but instead a request for home confinement. Although there is some ambiguity in the first sentence of the email, in which Washington expressed she "wanted to know if [she was] one of the recipients for the home confinement release," Washington rectified the ambiguity by explaining later on in the message she "wanted to check in to see if [she was] actually eligible for the home confinement."[15]

Requests for home confinement and requests for compassionate release are not interchangeable. As one court has put it,

> [I]t is important to understand that a request for home confinement under the CARES Act is different than a reduction-in-sentence (RIS) request based upon compassionate release. The BOP is utilizing its authority under 18 U.S.C. § 3623(c)(2) and 34 U.S.C. § 60541—not the compassionate release provision of 18 U.S.C. § 3582(c)—to effectuate the Attorney General's directive to the BOP regarding home confinement in connection with the CARES Act.[16]

This distinction is important because the criteria used by BOP for evaluating the requests are different, and BOP's need to evaluate requests for compassionate release is great.[17] As a result, the Court finds Washington's email to her case manager requesting "home confinement" did not qualify as a request for compassionate release to the warden of her

---

[14] *United States v. Reeves*, No. CR 18-00294, 2020 WL 1816496, at *1 (W.D. La. Apr. 9, 2020).

[15] R. Doc. 188-3.

[16] *United States v. Tandy*, No. 4:10-CR-159, 2020 WL 2772766, at *1 (S.D. Ga. May 28, 2020).

[17] *United States v. McCann*, 2020 WL1901089, at *2 (E.D. Ky. Apr. 17, 2020) ("The Court recognizes that these are unsettling times for everyone, including prisoners. But in such a context, the exhaustion requirement of the compassionate release statute is perhaps most important. . . . The requirement recognizes that the BOP is better positioned than the courts to first assess issues such as a defendant's health, the adequacy of the measures taken by a particular place of incarceration to address any health risks, the risk presented to the public by a defendant's release, and the adequacy of a defendant's release plan.").

facility, and, as a result, she has not exhausted administrative remedies under § 3582(c)(1)(A).

**B. Even if Washington had exhausted administrative remedies, she has not presented any "extraordinary and compelling reasons" warranting a reduction of her sentence.**

According to § 3582(c)(1)(A)(i), a district court may reduce a defendant's term of imprisonment if the court finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[18] The United States Sentencing Commission's relevant policy statement, found in § 1B1.13 application note 1 of the United States Sentencing Guidelines Manual, sets forth three specific circumstances considered "extraordinary and compelling," as well as a catchall provision:

1. Extraordinary and Compelling Reasons.--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

---

[18] 18 U.S.C. § 3582(c)(1)(A)(i).

4

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).[19]

Washington bears the burden of establishing she is eligible for a sentence reduction under § 3582(c)(1)(A)(i).[20] In this case, Washington is not over 65 years old[21] and has not alleged any "family circumstances" warranting relief, so only subsections (A) and (D) of the policy statement are relevant.

### 1. Washington has not presented any "extraordinary and compelling" medical conditions warranting a reduction of her sentence.

The Court first considers Washington's argument that she is entitled to a reduction in her sentence because she suffers from hypertension. Subsection (A) of the policy

---

[19] U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018).
[20] *United States v. Ennis*, EP-02-CR-1430-PRM-1, 2020 WL 2513109, at *4 (W.D. Tex. May 14, 2020) ("[T]he defendant has the burden to show circumstances meeting the test for compassionate release." (citing *United States v. Stowe*, No. CR H-11-803 (1), 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019))); *United States v. Wright*, Crim. Action No. 16-214-04, 2020 WL 1976828, at *6 (W.D. La. Apr. 24, 2020) (holding the petitioner has the "burden of showing the necessary circumstances, or a combination of circumstances, that would warrant relief under the compassionate release statute").
[21] *Find and Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/.

statement defines two categories of "medical conditions" as "extraordinary and compelling." Under subsection (A)(i), the defendant must "suffer[] from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)."[22] "Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia."[23] Washington's hyertension is not on par with the examples of "serious and advanced illness[es]" listed in the policy statement.

Under subsection (A)(ii), the defendant must be suffering from a serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[24] Washington does not allege, nor is there any evidence in the record indicating, that she cannot provide herself with care or that she is expected not to recover from her condition. Accordingly, Washington has not met her burden of presenting any "extraordinary and compelling" medical conditions warranting a reduction of her sentence.

### 2. Washington has not presented any other "extraordinary and compelling" reasons warranting a reduction of her sentence.

Because Washington's health condition does not constitute an extraordinary and compelling reason for a sentence reduction under subsection (A) of the policy statement, Washington may obtain compassionate release only if the "catchall" provision, stated in subsection (D) of the policy statement, applies. The "catchall" provision covers "extraordinary and compelling reasons other than, or in combination with," medical condition, age, or family circumstances.[25]

---

[22] U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1(A)(i) (U.S. SENTENCING COMM'N 2018).
[23] *Id.*
[24] *Id.* § 1B1.13, cmt. n.1(A)(ii).
[25] U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1(D) (U.S. SENTENCING COMM'N 2018).

The Court notes the policy statement, last amended on November 1, 2018, has not been updated since the passage of the First Step Act on December 21, 2018. The First Step Act amended § 3582(c) to allow not only the BOP but also a defendant to bring a motion arguing extraordinary and compelling reasons warrant a reduction in the defendant's sentence. The policy statement provides, "A reduction under this policy statement may be granted *only upon motion by the Director of the Bureau of Prisons.*"[26] As a result of this clear conflict, there is some dispute as to which portions, if any, of the policy statement should continue to apply to § 3582 after the passage of the First Step Act.[27]

For example, disagreements exist over whether courts may determine what constitutes an extraordinary and compelling reason under the catchall provision in subsection (D). Although the First Step Act amended § 3582(c) to allow a defendant, and not just the BOP, to bring a motion in court arguing extraordinary and compelling reasons warrant a reduction in a defendant's sentence, subsection (D) of the policy statement only permits the BOP to determine what constitutes "extraordinary and compelling reason[s]" under that subsection.[28] Some courts have questioned why a defendant can bring a motion for compassionate release *in court* if the court cannot decide what amounts to extraordinary and compelling reasons for such release. Those courts have held that, pursuant to the policy goals of the First Step Act, not only the BOP but also courts may now determine what constitutes such "other" extraordinary and compelling reasons. As one court put it, "the only way direct motions to district courts would increase the use of

---

[26] *Id.* § 1B1.13 cmt. n.4.
[27] *See, e.g., United States v. Brown*, 2019 WL 4942051, at *4 (S.D. Iowa Oct. 8, 2019); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019); *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019); *United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019).
[28] *See, e.g., United States v. Overcash*, 3:15-cr-263-FDW-l, 2019 WL 1472104, at *2 (W.D.N.C. Apr. 3, 2019) ("The Court agrees that § 1B1.13 now conflicts with § 3582 insofar as a defendant is now able to request a sentence reduction upon a defendant's own motion rather than having to rely on the BOP Director.").

compassionate release is to allow district judges to consider the vast variety of circumstances that may be 'extraordinary and compelling.'"[29] Other courts, however, have not broken from the text of subsection (D) as currently written and have held the BOP alone may determine what qualifies as "other" extraordinary and compelling circumstances.[30]

The Court need not weigh in on this conflict in order to resolve the instant motion for compassionate release. For the reasons discussed below, even if both the Court and the BOP may determine what additional circumstances constitute "extraordinary and compelling" circumstances under the catchall provision, Washington is not entitled to compassionate release.

Multiple courts—deciding they have discretion to define extraordinary and compelling circumstances outside of the policy statement—have found "extraordinary and compelling" reasons warranting a reduction in a petitioner's sentence if a petitioner has an underlying medical condition rendering him or her particularly susceptible to contracting COVID-19.[31] It is clear, however, "[g]eneral concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to

---

[29] *Brown*, 2019 WL 4942051, at *3.

[30] *United States v. Joseph*, No. CR 15-307, 2020 WL 3128845, at *3 (E.D. La. June 12, 2020) ("The Guidelines also identify a category of '[o]ther [r]easons,' but state that such reasons are '[a]s determined by the Director of the Bureau of Prisons.'").

[31] *See, e.g.*, *United States v. Rodriguez*, Criminal Action No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020) (granting compassionate release to defendant who was "especially vulnerable" to COVID-19 due to his diagnoses of "[t]ype 2 diabetes mellitus with diabetic neuropathy, essential hypertension, obesity, and 'abnormal liver enzymes in a pattern most consistent with non-alcoholic fatty liver disease'"); *United States v. Jepsen*, Civ. Action 19-73, 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020) (granting compassionate release to defendant who "is immunocompromised and suffers from multiple chronic conditions that are in flux and predispose him to potentially lethal complications if he contracts COVID-19"); *United States v. Muniz*, Criminal Action 09-199, 2020 WL 1540325, at *2 (S.D. Tex. March 30, 20120) (finding extraordinary and compelling circumstances because "[d]efendant has been diagnosed with serious medical conditions that, according to reports from the Center[s] for Disease Control, make him particularly vulnerable to severe illness from COVID-19 . . . includ[ing] inter alia, end stage renal disease, diabetes, and arterial hypertension").

establish the extraordinary and compelling reasons necessary to reduce a sentence."[32] The Centers for Disease Control and Prevention ("CDC") has set forth a list of underlying medical conditions causing an individual to be particularly susceptible to contracting COVID-19.[33] These underlying medical conditions include moderate-to-severe asthma, hypertension, chronic kidney disease being treated with dialysis, chronic lung disease, diabetes, hemoglobin disorders, liver disease, and conditions and treatments causing an individual to be immunocompromised, such as cancer treatment, bone marrow or organ transplantation, immune deficiencies, HIV with a low CD4 cell count, HIV without HIV treatment, and prolonged use of corticosteroids and other immune weakening medications.[34]

In this case, Washington argues extraordinary and compelling reasons are present for compassionate release because she suffers from hypertension, which renders her susceptible to COVID-19. In support, Washington attaches medical records showing she has been diagnosed with hypertension.[35] While hypertension is on the CDC's list of factors that may increase a person's risk of severe illness due to COVID-19, the Court finds this, by itself, is not an "extraordinary and compelling reason" for a reduction in sentence. Notably, there is no COVID-19 outbreak at FCI Aliceville, where Washington is incarcerated,[36] and she has established no other risk factors for COVID-19. Further, some courts, in deciding whether the catchall provision applies based on an inmate's medical condition, have considered whether the inmate has access to medical care and whether

---

[32] *United States v. Wright*, Criminal Action No. 16-214-04, 2020 WL 1976828, at *6 (W.D. La. Apr. 24, 2020).

[33] *See Groups at Higher Risk for Severe Illness*, CTR. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

[34] *Id.*

[35] R. Doc. 188-2.

[36] FCI Aliceville has 1 inmate and 2 staff members who have tested positive for COVID-19. *COVID-19*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/.

the prison is taking steps to control Covid-19.[37] Washington has not established FCI Aliceville is unable to manage her health issues and the risks of COVID-19.

As a result, the Court finds Washington has alleged nothing more than "[g]eneral concerns about possible exposure to COVID-19."[38] Even if the Court has the authority to determine what is "extraordinary and compelling" under subsection (D) of the policy statement, the Court does not find Washington's general concerns warrant compassionate release. Because Washington has failed to present any "extraordinary and compelling" reasons warranting a reduction in her sentence, she is not entitled to relief under § 3582.

## II. The Court Lacks Authority to Transfer Washington to Home Confinement.

Washington appears to seek relief alternatively under 18 U.S.C. § 3622, as she asks the Court to order BOP to release her on home confinement prior to her current release date.[39] 18 U.S.C. § 3621 provides "[t]he *Bureau of Prisons* shall designate the place of the prisoner's imprisonment,"[40] and, pursuant to § 3622, "[t]he *Bureau of Prisons* may release a prisoner from the place of h[er] imprisonment for a limited period," under certain circumstances.[41] As a result, BOP has exclusive authority to determine where a prisoner is housed and the terms of a prisoner's pre-release custody.[42]

---

[37] *United State v. Reed*, No. CR 15-100, 2020 WL 2850145, at *5 (E.D. La. June 2, 2020) (denying a prisoner's request for compassionate release, in part, because "[t]he Court [was] not concerned with [the prisoner]'s access to quality medical care while in the custody of the Bureau of Prisons" and "the BOP not only is aware of COVID-19, but also is taking its own measures to address the disease's impact").

[38] *United States v. Clark*, No. 17-85-SDD-RLB, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020).

[39] R. Doc. 176-2.

[40] 18 U.S.C. § 3621(b) (emphasis added).

[41] 18 U.S.C. § 3622 (emphasis added).

[42] 18 U.S.C. § 3621(B); *see also United States v. Snead*, 63 F.3d 281, 389 n.6 (5th Cir. 1995) (declining to address the defendant's request that he be allowed to serve the remainder of his sentence on home confinement because "such requests are properly directed to the Bureau of Prisons"); *United States v. Voda*, 994 F.2d 149, 151 (5th Cir. 1993) (sentencing court "may recommend that a sentence imposed under section 3621 be served in a particular prison or jail," but "only the Bureau of Prisons has the actual authority to designate the place of incarceration").

Because Washington seeks release to home confinement, her initial remedy is by administrative action within BOP. Following exhaustion, the proper vehicle to challenge BOP's administrative decisions is a petition pursuant to 28 U.S.C. § 2241.[43] A challenge to an administrative decision of BOP pursuant to 28 U.S.C. § 2241 must be filed in the district where Washington is incarcerated. Washington is incarcerated in Aliceville, Alabama. Thus, any such motion must be brought in the United States District Court for the Northern District of Alabama, which encompasses Aliceville, Alabama. As a result, the Court must deny the instant motion, as this Court lacks authority under 18 U.S.C. § 3622 to order BOP to transfer Washington to home confinement.

## **CONCLUSION**

**IT IS ORDERED** that Alicia Washington's motion for compassionate release is **DENIED**.[44]

New Orleans, Louisiana, this 15th day of July, 2020.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[43] *See Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000).
[44] R. Doc. 176.